ADLESON, HESS & KELLY, APC
Randy M. Hess, Esq. (SBN 88635)
Nicole S. Adams-Hess, Esq. (SBN 286632)
577 Salmar Avenue, Second Floor
Campbell, California 95008
Telephone: (408) 341-0234
Facsimile: (408) 341-0250
rhess@ahklaw.com
nhess@ahklaw.com

Attorneys for Defendant/Counterclaimant
INB INSURANCE SERVICES CORPORATION

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA - SAN FRANCISCO DIVISION

| | |
|---|---|
| GENERAL INSURANCE COMPANY OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>INB INSURANCE SERVICES CORPORATION,<br><br>Defendant. | Case No:      3:18-cv-03372-JST<br><br>**DEFENDANT INB INSURANCE SERVICES CORPORATION'S SUPPLEMENTAL OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND FED. R. CIV. PROC. R. 56(f) REQUEST FOR SUMMARY JUDGMENT IN FAVOR OF NONMOVANT INB INSURANCE SERVICES CORPORATION**<br><br>Date:          No Hearing Set<br>Place:         450 Golden Gate Avenue<br>                  Courtroom 9, 19th Floor<br>                  San Francisco, CA 94102<br>Judge:        Hon. Jon S. Tigar |

# TABLE OF CONTENTS

Page

I.    INTRODUCTION……………………………………………………… 1

II.   FACTUAL OVERVIEW………………………………………………… 2

     A. The State Court Action …………………………………………….... 2

     B. The Relevant Policy Language……………………………………… 7

     C. Coverage Dispute…………………………………………………… 8

III.   ARGUMENT……………………………………………………… 8

     A. The Applicable Legal Standard…………………………………… 8

     B. GICA Fails to Prove *Conclusively* that the Claims Arising from the 2016 Hulse Alleged Negligent Omissions are Related to the Claims Arising from the 2009 Andrist/Schultz Alleged Negligent Acts……………………… 9

     C. The 2009 Andrist/Schultz Alleged Negligent Acts and the 2016 Hulse Alleged Negligent Omissions are not So Causally or Logically Related As to Destroy Coverage under the Second GICA Policy……………………… 11

         1.    The Claims are not "Causally" Related…………………………… 11

         2.    The Claims are not "Logically" Related…………………………… 13

             a.    The Claims Assert Separate Injuries and Damages……………… 15

             b.    The Claims Arise out of Different Acts and Omissions…………… 16

             c.    The Two Claims Arise from Conduct Alleged to have been Committed by Different People…………………………………….. 18

             d.    It is not Determinative that the Claim was Made by the Same Plaintiff…………………………………………………………… 19

             e.    The Alleged Wrongful Acts are not Part of the same Pattern of Similar Activity…………………………………………………….. 19

             f.    The Better Part of a Decade Passed Between the Alleged 2009 Wrongful Act and the Alleged 2016 Wrongful Act, Weighing Against a Finding of Relatedness…………………………………. 21

ADLESON, HESS &
KELLY, APC
577 SALMAR AVE., 2D FL.
CAMPBELL, CA 95008
(408) 341-0234
FAX (408) 341-0250
WWW.AHK-LAW.COM

Case No: 3:18-cv-03372-JST      SUPPLEMENTAL OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT      Page i

D. INB Reasonably Expected Coverage for Both the Alleged Negligent Act and the Alleged Negligent Omission……………………………………………….. 21

E. The Underwriting File Shows no Intent to Preclude Coverage for Any Additional Claim Relating to West Overland…………………………………. 22

**IV. CONCLUSION**………………………………………………………. 23

**V. OBJECTIONS**…………………………………………………………... 23

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ADLESON, HESS & KELLY, APC
577 SALMAR AVE., 2D FL.
CAMPBELL, CA 95008
(408) 341-0234
FAX (408) 341-0250
WWW.AHK-LAW.COM

1

## **TABLE OF AUTHORITIES**

2

**Cases**

3

*AIU Ins. Co. v. Superior Court* (1990) 51 Cal.3d 807 .................................................10

4

*Ameron Intern. Corp. v. Insurance Co. of State of Pennsylvania* (2010) 50 Cal.4th 1370......10

5

*Anderson v. Liberty Lobby, Inc.* (1986) 477 U.S. 242...................................................8

6

*Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Ins. Co.* (1993) 5 Cal.4th 854 ..... passim

7

*Beaumont v. Cal Union Ins. Co.* (1977) 63 Cal.App.3d 617 ....................................11

8

*Biomechanics, Inc. v. Axis Reinsurance Co.* (D. Mass 2013) 963 F.Supp.2d 64 ..............2, 23

9

*CalFarm Ins. Co. v. TAC* (1985) 172 Cal.App.3d 564 ......................................10, 11

10

*CNA Cas. of Calif. v. Seaboard Surety Co.* (1986) 176 Cal.App.3d 598 ..............................10

11

*Cushman & Wakefield, Inc. v. Illinois Nat'l Ins. Co.* (N.D. Ill. Apr. 20, 2018)

12

    2018 WL 1898339 ...................................................................14

13

*David Kleis, Inc. v. Superior Court* (1995) 37 Cal.App.4th 1035.............................................10

14

*Dormitory Auth. Of New York v. Cont'l Cas. Co.,* No. 12 Civ. 281 (KBF)

15

    2013 WL 840633, at *8 (S.D.N.Y. Mar. 5, 2013),

16

    aff'd in relevant part 756 F.3d 166 (2d. Cir. 2014.) .....................................23

17

*E.M.M.I. Inc. v. Zurich American Ins. Co.* (2004) 32 Cal.4th 465 ..........................................10

18

*Financial Management Advisors, LLC v. American Intern. Specialty Lines Ins. Co.*

19

    (9th Cir. 2007) 506 F.3d 922.........................................................16, 17, 18

20

*Friedman Prof. Management Co., Inc. v. Norcal Mut. Ins. Co.*

21

    (2004) 120 Cal.App.4th 17 ........................................................ passim

22

*Garvey v. State Farm* (1989) 48 Cal.3d 395.....................................................2, 11

23

*Gray v. Zurich Ins. Co.* (1966) 65 Cal.2d 263 ........................................................10

24

*Haskel, Inc. v. Superior Court* (1995) 33 Cal.App.4th 963...........................................10

25

*Horace Mann Ins. Co. v. Barbara B.* (1993) 4 Cal.4th 1076 ...............................................10

26

*Ins. Co. of North America v. Sam Harris Const.* (1978) 22 Cal.3d 409.................................11

27

*Liberty Insurance Underwriters, Inc. v. Davies Lemmis Raphaely Law Corporation*

28

ADLESON, HESS &
KELLY, APC
577 SALMAR AVE., 2D FL.
CAMPBELL, CA 95008
(408) 341-0234
FAX (408) 341-0250
WWW.AHK-LAW.COM

(C.D. Cal. 2016) 162 F.Supp.3d 1068 ........................................................... 19, 20, 21

*MacKinnon v. Truck Ins. Exch.* (2003) 31 Cal.4th 635 ...................................... 10, 11

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.* (1986) 475 U.S. 574 ......................... 8

*Montrose Chemical Corp. v. Superior Court* (1993) 6 Cal.4th 287 ....................................... 2, 9

*National Union Fire Ins. Co. v. Lynette C.* (1994) 27 Cal.App.4th 1434 ........................... 16, 19

*Novapro Risk Solutions, L.P. v. TIG Insurance Company*

    (Cal. Ct. App., Mar. 16, 2012, No. D059066) 2012 WL 913243, at *13-14 ............ 15, 21

*Ortega Rock Quarry v. Golden Eagle Ins. Corp.* (2006) 141 Cal.App.4th 969 ........................ 9

*State Farm v. Partridge* (1973) 10 Cal.3d 94 ...................................................................... 10, 11

*Walker v. Armco Steel Corp.* (1980) 446 U.S. 740 .............................................................. 9

*WFS Fin., Inc. v. Progressive Cas. Ins. Co.* (9th Cir. 2007) 232 F.App'x 624 .................. 19, 20

**Other Authorities**

*Related Acts Provisions: Patterns Amidst the Chaos*,

    50 Val. U. L. Rev. 633 (2016) ............................................................. 14, 15, 16, 19, 21

**Rules**

Fed.R.Civ.Pro 56(a) ................................................................................................................ 8

Fed. R. Civil Procedure R. 56(f) ................................................................................. 1, 2, 8, 9

ADLESON, HESS &
KELLY, APC
577 SALMAR AVE., 2D FL.
CAMPBELL, CA 95008
(408) 341-0234
FAX (408) 341-0250
WWW.AHK-LAW.COM

1    Defendant and Counterclaimant INB Insurance Services Corporation ("INB") opposes

2    Plaintiff and Counter-defendant General Insurance Company of America's ("GICA") motion for

3    summary judgment. INB requests that this Court deny all relief requested by GICA. In addition,

4    under Federal Rule of Civil Procedure Rule 56(f), INB requests that this Court issue an order

5    granting summary judgment in its favor, finding that each of the professional liability policies

6    issued by GICA to INB, with a total of $3,000,000 in limits of liability, provide coverage for the

7    claims asserted in the Underlying Action.[1]

8    **I.    <u>INTRODUCTION</u>**

9    INB purchased consecutive professional liability policies from GICA for many years in

10   exchange for the promise of protection should clients of the insurance agency bring malpractice

11   claims. INB faithfully paid substantial premiums to GICA year after year, with the expectation

12   that if a covered claim was made during a policy year, it was entitled to the security afforded

13   by that policy.

14   Two insurance policies are relevant to this dispute. The first provides coverage for claims

15   made between January 1, 2016 and January 1, 2017. The second provides coverage for claims

16   made between January 1, 2017 and January 1, 2018. INB paid a premium of $18,502 for the

17   first policy for $1,000,000 in liability coverage. (Declaration of Cass Cossairt ["Cossairt Decl."],

18   Ex. A, p. 2.) INB paid a premium of $22,547 for the second policy for $2,000,000 in liability

19   coverage. (Cossairt Decl., Ex. B, p. 1.)

20   In bringing this declaratory relief action and motion for summary judgment, GICA asks

21   this Court to invalidate the $22,547 paid by INB for the protection afforded by the 2017-2018

22

23   ───────────────────

24   [1] INB filed a motion to stay/dismiss the Declaratory Relief Action pending final judgment or

25   resolution of the Underlying Action due to an overlap of factual issues in both actions. (Dkt. No.

26   19.) The Court denied that motion, and required a response from INB to the Motion for

27   Summary Judgment. (Dkt. No. 32.) Nothing in this response shall constitute an admission of

28   liability in the Underlying Action, and INB disputes all liability in the Underlying Action.

ADLESON, HESS &
KELLY, APC
577 SALMAR AVE., 2D FL.
CAMPBELL, CA 95008
(408) 341-0234
FAX (408) 341-0250
WWW.AHK-LAW.COM

Case No: 3:18-cv-03372-JST    SUPPLEMENTAL OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT    PAGE 1

policy, and to deem intertwined two separate, distinct, independent and isolated wrongful acts alleged to have occurred over seven years apart, carried out by different individuals and allegedly resulting in distinct and divisible damages, contrary to the intent of the parties and defeating the insured's coverage. If this Court were to deem the independent acts interrelated, this would work an unjust forfeiture of coverage not supported by the policy language.

Complicating matters, GICA seeks this declaration of noncoverage while the Underlying Action is still proceeding. There has been no trial, and thus, no final adjudication of the underlying facts giving rise to the claims for coverage. In the absence of this final adjudication, the unsettled facts continue to raise a potential for coverage. INB has met its burden of demonstrating a *potential* for coverage, (*Montrose Chemical Corp. v. Superior Court* (1993) 6 Cal.4th 287, 300), while GICA cannot meet its burden of *conclusively* proving that the underlying facts demonstrate that the wrongful acts alleged are so related as to defeat coverage under the "Related Acts" provision of the 2017-2018 policy. (*See Garvey v. State Farm* (1989) 48 Cal.3d 395, 406; *Biomechanics, Inc. v. Axis Reinsurance Co.* (D. Mass 2013) 963 F.Supp.2d 64, 70 (denying insurer's summary judgment on relatedness as premature, which required determinations of questions of fact).) As such, INB requests that this Court grant summary judgment in favor of INB under Fed. R. Civil Procedure R. 56(f), or alternatively, deny GICA's motion for summary judgment, but it is certainly premature to grant GICA's summary judgment motion before the final adjudication of the issues of alleged wrongful conduct in the Underlying Action.

## II.   FACTUAL OVERVIEW

### A.   The State Court Action

By its declaratory relief action, GICA seeks a final judicial determination that only one of two of the insurance policies paid for by its policyholder, insurance agent INB, is implicated in the Underlying Action.

In the Underlying Action, INB is being sued by its client, West Overland LLC ("West Overland") for professional negligence after its client's property insurer, Travelers, refused coverage for two separate fires that occurred, almost one year apart, at the client's property

ADLESON, HESS &
KELLY, APC
577 SALMAR AVE., 2D FL.
CAMPBELL, CA 95008
(408) 341-0234
FAX (408) 341-0250
WWW.AHK-LAW.COM

Case No: 3:18-cv-03372-JST   SUPPLEMENTAL OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT   PAGE 2

1   located at 1000-1036 Apgar Street in Oakland, California ("the Property"). (Declaration of

2   Nicole S. Adams-Hess ["Adams-Hess Decl."], ¶ 2, Ex. A ["SAC"] at ¶ 12.) West Overland

3   purchased the Property in 2009, and procured commercial property insurance with Travelers

4   through its insurance agent INB. (*Id*. at ¶¶ 8-10, 13.) Travelers issued to West Overland

5   insurance policy number 680-7220N517, which provided $4,500,000 of coverage for first party

6   property claims, including fire damage, among other coverages ("the Travelers policy"). (*Id*. at

7   ¶ 14.) The Travelers policy renewed automatically each year without input from INB or West

8   Overland. (*Id*. at ¶ 24.)

9       *The First Fire*

10      On July 6, 2016, a fire broke out at a construction site next to the Property. (*Id*. at ¶ 28.)

11  The fire spread to the Property, damaging two of the four buildings. (*Id*.) West Overland

12  tendered the claim to Travelers, and Travelers denied coverage asserting that West Overland

13  breached a condition precedent by failing to have the entire building sprinklered as was

14  purportedly required by an endorsement buried in the insurance policy entitled "Protective

15  Safeguard Endorsement" ("PSE"), and was reported as being "sprinklered" in the application

16  for insurance. (*Id*. at ¶¶ 32, 19.)

17      *The Second Fire*

18      On May 13, 2017, almost a year after the first fire and six months after the initial

19  complaint was filed, a second fire occurred at the Property. This second fire caused separate

20  and additional damage. (*Id*. at ¶ 37.) Travelers denied this claim, relying on the PSE. (*Id*. at ¶¶

21  39-40.) Thereafter, West Overland amended its complaint against INB to raise additional and

22  different grounds for a finding of negligence. (*See Id*., Second Cause of Action, p. 12.)

23      *West Overland's Claims Against INB: The 2009 Allegations of Negligent Acts*

24      West Overland asserts two separate claims for professional negligence set forth in two

25  separate causes of action against INB.  (*Id*. at pp. 11, 12.) The operative complaint asserts that

26  INB was negligent in incorrectly checking a box on the insurance application by allegedly

27  incorrectly indicating that the Property was "sprinklered," and erroneously transmitting this

28  information to Travelers prior to policy issuance in June 2009. (*Id*. at ¶¶ 8, 12.) Underlying

ADLESON, HESS &
KELLY, APC
577 SALMAR AVE., 2D FL.
CAMPBELL, CA 95008
(408) 341-0234
FAX (408) 341-0250
WWW.AHK-LAW.COM

Case No: 3:18-cv-03372-JST    SUPPLEMENTAL OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT    PAGE 3

plaintiff West Overland contends that during the underwriting process, INB erroneously checked the box on Travelers' electronic quote-to-issue underwriting system that each of the four buildings on the Property was "sprinkled," and otherwise failed to procure a policy that would provide it with coverage for damage caused by fire. (*Id*. at 12.) When West Overland tendered the first fire loss for coverage, Travelers denied West Overland's request for coverage and refused to pay the claim. (*Id*. at ¶¶ 32, 33.) Based on this denial of coverage, West Overland filed suit on November 3, 2016 against INB and Travelers, asserting negligence in failing to procure requested property coverage. (*Id*. at ¶¶ 13-14.)

In his deposition taken on October 5, 2017, before the second amended complaint was filed in the Underlying Action, the former president of INB, Charles Andrist, testified that on or around May 29, 2009, he received a fax from established client West Overland informing him that it was going to purchase a new property in Oakland, California, and it needed insurance to close escrow. (Adams-Hess Decl., ¶ 3, Ex. B, p. 28:23-25; 29:1-3; 31:7-9.) The client requested that Mr. Andrist obtain quotes from insurers. (*Id*.)

Following this request, Mr. Andrist filled out a standard ACORD application, and sent it to four different markets, including Travelers, requesting a quote for fire insurance coverage. (*Id*. at p. 31:7-11.) On the ACORD application, there was a question regarding whether the property had fire suppression sprinklers. Mr. Andrist wrote "sprinklered" on a particular box on the application. (*Id*. at p. 31:12-19.) After Mr. Andrist faxed the ACORD application to Travelers on June 4, 2009, the client directed Mr. Andrist to speak with the developer to learn more information about the property, as she was not aware of the details regarding sprinkler or other matters. (*Id*. at 46:1-9). In his conversation with the developer, Mr. Andrist learned that only two units had sprinklers. (*Id*.) After this conversation, Mr. Andrist had a conversation with Travelers underwriter Kevin Kiernan explaining that the Property was only partially sprinklered, as well as other details about the Property. (*Id*. at 47:7-9; 48:2-17.)

During this conversation, Mr. Kiernan requested that INB input the data into a computer program called Travelers Express, which would generate a quote for insurance coverage with Travelers. (*Id*. at p. 50:12-25, 51:1-4.) After this phone call, Mr. Andrist directed his employee,

ADELSON, HESS &
KELLY, APC
577 SALMAR AVE., 2D FL.
CAMPBELL, CA 95008
(408) 341-0234
FAX (408) 341-0250
WWW.AHK-LAW.COM

Case No: 3:18-cv-03372-JST     SUPPLEMENTAL OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT     PAGE 4

1   INB customer service representative, Janice Schultz, to enter the information from his quote

2   file into the Travelers Express system in order to generate a quote. (*Id*. at 27:8-22; 28:1-14;

3   162:20-22, 163:2-4.) While inputting the data, Ms. Schultz marked "sprinklered" for each of the

4   four buildings. (*Id*. at 170:9-25.). West Overland received the quote and purchased the policy

5   from Travelers, which went into effect on June 29, 2009. (*Id*. at 175:20-23; 179:3-23.)

6        The policy automatically renewed each year with no issues for seven years. (SAC, ¶

7   24.)  During this seven-year period, the two INB employees who handled the issuance of the

8   first Travelers policy to West Overland left INB -- Mr. Andrist retired in early 2010 and Ms.

9   Schultz passed away. (Adams-Hess Decl., ¶ 4, Ex. C, at 194:25; 195:1-2; 196:7-14; Adams-

10  Hess Decl., ¶ 3, Ex. B, at 27:24-25; 28:1.) Craig Hulse, who succeeded Mr. Andrist as INB

11  President, was not on the West Overland account in 2009, and had nothing to do with the initial

12  issuance of the 2009-2010 Travelers policy. (Adams-Hess Decl., ¶ 4, Ex. C, at 303:1-8.) The

13  allegations against INB concerning the alleged errors in the underwriting and initial issuance of

14  the Travelers policy shall collectively be referred to herein as the "2009 Andrist/Schultz alleged

15  negligent acts."

16        *West Overland's Claims Against INB: The 2016 Allegations of Negligent Omissions*

17        In its second cause of action in the operative complaint, West Overland alleges that over

18  seven years after it had initially obtained the first Travelers policy, INB (through the alleged acts

19  of its current President Craig Hulse) was negligent in a different respect – in failing to ensure

20  that the PSE had been removed from the policy after the policy failed to provide coverage for

21  the first fire loss. (SAC, ¶ 55.) West Overland filed its operative complaint, the second amended

22  complaint, on November 6, 2017. (*Id*. at p. 26.) In her deposition, the principal for West

23  Overland, Jennifer Chen, asserted that after the first fire, she made telephone calls to INB, but

24  nobody called her back. (*Id*. at ¶ 5, Ex. D, at 117: 13-15.) In Mr. Hulse's deposition, he confirms

25  that he contacted Travelers and requested that it remove the PSE. (*Id*. at ¶ 4, Ex. C, at 173-

26  176.) However, the underlying plaintiff asserts that he did not take adequate steps to ensure

27  the removal of the PSE. (SAC, ¶ 55.) These allegations of wrongful conduct arising out of an

28  alleged omission to procure the insurance requested by the insured do not relate to the

ADLESON, HESS &
KELLY, APC
577 SALMAR AVE., 2D FL.
CAMPBELL, CA 95008
(408) 341-0234
FAX (408) 341-0250
WWW.AHK-LAW.COM

Case No: 3:18-cv-03372-JST     SUPPLEMENTAL OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT     PAGE 5

affirmative allegedly negligent acts by Andrist and Schultz in 2009 in checking a box indicating that the property at issue was sprinklered. Those alleged acts of negligent misrepresentation occurred seven years earlier, involved individuals no longer with INB at the time of the alleged 2016 omission by Hulse in failing to ensure that he had procured the insurance requested by INB's client. The negligent omissions asserted against INB in 2016 shall collectively be referred to herein as the "2016 Hulse alleged negligent omissions."

*INB's Tender of the Claims to GICA*

West Overland filed its initial complaint against INB and Travelers after the first fire, on November 3, 2016. (SAC, ¶¶ 13-14.) INB timely tendered this first claim to GICA under its "Insurance Professionals Errors and Omissions Liability Insurance Policy" in effect at the time, GICA policy no. LP7108860O, with $1 million per claim limits of liability, with a policy period of January 1, 2016 to January 1, 2017 ("First GICA Policy"). (*Id.*; Dkt. No. 1, Ex. A.)

The second fire occurred at the property almost one year later on May 13, 2017, and Travelers again refused to provide coverage. West Overland filed its second amended complaint in November 2017 alleging separate negligent omissions based upon an alleged omission by Hulse in failing to ensure that he had procured the insurance requested. (SAC, ¶ 55.)

INB tendered a second claim to GICA based upon the new and additional allegations. INB tendered the new claim under a different insurance policy, the one in effect from January 1, 2017 through January 1, 2018 with limits of $2 million per claim ("Second GICA Policy"). (Dkt. No. 1, Ex. B.)  The premium paid for this insurance policy was $22,547. (Dkt. No. 1, Ex. B, p. 44.) Importantly, the new policy contains no specific endorsement or limitation excluding coverage for claims by West Overland, or claims related to the policies issued to West Overland, and nothing in the underwriting file evidences any intent by the parties to exclude coverage for claims by West Overland or for the Underlying Action. (Dkt. No. 1, Ex. B; Adams-Hess Decl,. ¶ 6.) Nevertheless, GICA refused to extend coverage to INB under the Second GICA Policy. (Dkt. No. 1, ¶ 20.)

ADLESON, HESS & KELLY, APC
577 SALMAR AVE., 2D FL.
CAMPBELL, CA 95008
(408) 341-0234
FAX (408) 341-0250
WWW.AHK-LAW.COM

Case No: 3:18-cv-03372-JST    SUPPLEMENTAL OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT    PAGE 6

1    The issue in GICA's declaratory relief action and in the instant motion is whether the

2  allegations of wrongful conduct asserted against INB in the Underlying Action constitute a

3  single claim or two separate claims, whether both policies issued by GICA provide coverage

4  for the allegations of wrongful conduct, and ultimately, whether the available policy limits are

5  $1 million (the limits of the First GICA Policy) or $3 million (the combined limits of the two

6  policies).

7    **B.    The Relevant Policy Language**

8  Both Policies provide the following terms:

9    **SECTION I. INSURING AGREEMENTS**

10    **A.  COVERAGE PROVISION**

11    We will pay on behalf of the Insured **damages** that the Insured
12    becomes legally obligated to pay because of **claims** made
     against the Insured for **wrongful acts** arising out of the
13    performance of **professional services** for others.

14    * * *

15    **SECTION IV. DEFINITIONS**

16    **B.  "Claim"** means a demand for money or **professional services**
17    received by the Insured for **damages,** including but not limited
     to the service of a lawsuit or the institution of arbitration
18    proceedings or other alternative dispute resolution
     proceedings, alleging a **wrongful act** arising out of the
19    performance of **professional services.**

20    * * *

21    **Q.  "Wrongful Act"** means any actual or alleged negligent act,
22    error or omission, **Personal Injury, or Advertising Injury.**

23    GICA relies solely on the following policy language in the Second GICA Policy in support

24  of its position that there is only one "claim:"

25    "Two or more covered **claims** arising out of a single **wrongful act**
     or arising out of any series of related **wrongful acts** will be
26    considered a single **claim.** The single **claim** will be subject to the
     "Limit of Liability- Each Claim" in effect at the time such **claim** was
27    first made against the Insured. Only one deductible will apply to
     such single claim. If the first of such **claims** is made prior to the

28

ADLESON, HESS &
KELLY, APC
577 SALMAR AVE., 2D FL.
CAMPBELL, CA 95008
(408) 341-0234
FAX (408) 341-0250
WWW.AHK-LAW.COM

effective date of this policy, no coverage shall apply to any subsequent claims made during this **policy period** which are based upon the same or related **wrongful acts."** (Dkt. No. 1, Ex. B, p. 52.)

## C.     Coverage Dispute

INB maintains that the allegations of affirmative negligent conduct in 2009 that allegedly resulted in no coverage for the first fire, and the allegations of a negligent omission in 2016 that allegedly resulted in no coverage for the second fire constitute claims for damages arising from independent wrongful acts, mandating coverage under not only the First GICA Policy but under the Second GICA Policy as well. However, GICA contends that only the First GICA Policy applies, limiting INB's coverage to $1 million, rather than $1 million for the claims of negligent conduct and $2 million for the claim of a negligent omission.

## III.     <u>ARGUMENT</u>

### A.     The Applicable Legal Standard

To succeed on summary judgment, GICA must demonstrate there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. (Fed.R.Civ.Pro 56(a); *Anderson v. Liberty Lobby, Inc.* (1986) 477 U.S. 242, 255.) "[S]ummary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." (*Anderson v. Liberty Lobby, Inc.* (1986) 477 U.S. 242, 248.) "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." (*Id.*)

All inferences to be drawn must favor the non-moving party: "On summary judgment the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." (*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.* (1986) 475 U.S. 574, 587-588.)

Further, under Federal Rule of Civil Procedure 56(f), after giving notice and a reasonable time to respond, the court may also grant relief in favor of a non-moving party: "(1) grant summary judgment for a nonmovant; (2) grant the motion on grounds not raised by a

ADLESON, HESS &
KELLY, APC
577 SALMAR AVE., 2D FL.
CAMPBELL, CA 95008
(408) 341-0234
FAX (408) 341-0250
WWW.AHK-LAW.COM

Case No: 3:18-cv-03372-JST     SUPPLEMENTAL OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT     PAGE 8

1   party; or (3) consider summary judgment on its own after identifying for the parties material

2   facts that may not genuinely be in dispute."

3         Pursuant to Federal Rule of Civil Procedure 56(f), INB respectfully requests that this

4   Court grant summary judgment in its favor, finding that the Second GICA Policy provides

5   coverage for the claims alleged in the Underlying Action.

6   **B.    GICA Fails to Prove *Conclusively* that the Claims Arising from the 2016**

7           **Hulse Alleged Negligent Omissions are Related to the Claims Arising from**

8           **the 2009 Andrist/Schultz Alleged Negligent Acts.**

9         Summary judgment cannot be entered in favor of GICA, as it fails to meet its burden of

10  proving conclusively that under no set of facts can the Second GICA Policy afford coverage

11  for INB. Indeed, summary judgment would be properly granted *in favor of INB* because it has

12  shown, at a bare minimum, a *potential* that the claims asserted against it for alleged omissions

13  in 2016 are not related to the claims asserted against it for alleged wrongful acts occurring in

14  2009. As this Court explained in its order denying INB's Motion to Dismiss or Stay, it asserted

15  that the case may proceed because:

16          The question is whether West Overland's complaint "can by [any]

17          conceivable theory raise a single issue which could bring it within
        the policy coverage." *Hartford Cas. Ins. Co. v. Swift Distribution,*

18          *Inc.*, 59 Cal. 4th 277, 288 (2014) (quotation marks and citation
        omitted). INB must only "prove the existence of a *potential for*

19          *coverage*" – i.e., that there is some potential that the claims relating
        to the 2016 and 2017 fires do not arise out of the same or related

20          wrongful acts, not that the claims are, in fact, unrelated. *Montrose*,
        6 Cal. 4th at 300 (emphasis in original). (Order on Mot. to Dismiss

21          or Stay, Dkt. No. 32, p. 6-7.)

22        As this action is sitting in diversity, California law applies to all substantive issues. (see

23  *Walker v. Armco Steel Corp.* (1980) 446 U.S. 740, 750), the insured need only show a "bare"

24  potential or possibility of coverage in order to trigger a duty to defend.  (*Montrose Chemical*

25  *Corp. v. Superior Court* (1993) 6 Cal.4th 287, 300.)  "[T]o prevail on a duty to defend claim, an

26  insured need ' "only show that the underlying claim *may* fall within policy coverage...." ' (*Ortega*

27  *Rock Quarry v. Golden Eagle Ins. Corp.* (2006) 141 Cal.App.4th 969, 977, 46 Cal.Rptr.3d 517.)

28  Insurers have the more difficult burden of proving that the underlying claim *cannot* fall within

ADLESON, HESS &
KELLY, APC
577 SALMAR AVE., 2D FL.
CAMPBELL, CA 95008
(408) 341-0234
FAX (408) 341-0250
WWW.AHK-LAW.COM

1  policy coverage." (*Ameron Intern. Corp. v. Insurance Co. of State of Pennsylvania* (2010) 50

2  Cal.4th 1370, 1378; *Horace Mann Ins. Co. v. Barbara B.* (1993) 4 Cal.4th 1076, 1081; *Haskel,*

3  *Inc. v. Superior Court* (1995) 33 Cal.App.4th 963, 975.)

4  "Any doubt as to whether the facts give rise to a duty to defend is resolved in the

5  insured's favor." (*Haskel*, at 974, citing *Horace Mann*, at 1081.) An insurance policy provision

6  is ambiguous when it is susceptible of two or more reasonable constructions. (*E.M.M.I. Inc. v.*

7  *Zurich American Ins. Co.* (2004) 32 Cal.4th 465, 470 *(E.M.M.I.)*.) The court must construe the

8  ambiguous language against the insurer, who wrote the policy and is held "responsible" for the

9  uncertainty. (*AIU Ins. Co. v. Superior Court* (1990) 51 Cal.3d 807, 822.)

10  An insurer cannot construct a "formal fortress of the third party's pleadings and retreat

11  behind its walls." (*Gray v. Zurich Ins. Co.* (1966) 65 Cal.2d 263, 275-277.) "A duty to defend

12  may exist, therefore, even though the face of the complaint does not reflect a potential for

13  liability under the policy. This is so because current pleading rules liberally allow amendment;

14  the third party plaintiff cannot be the arbiter of coverage. (*David Kleis, Inc. v. Superior Court*

15  (1995) 37 Cal.App.4th 1035, 1045.) In evaluating the duty to defend, the focus is upon the

16  facts "rather than the formal theory of liability or cause of action pleaded." (*CNA Cas. of Calif.*

17  *v. Seaboard Surety Co.* (1986) 176 Cal.App.3d 598, 607.)

18  INB was entitled to a defense under the Second GICA Policy upon its showing of a

19  "potential" or "possibility" that the claims are not related. If INB can show from any source a

20  potential that the two claims are not related, GICA must extend a defense under the Second

21  GICA Policy, and this motion must be denied.

22  In order to prevail on its summary judgment motion, GICA has the difficult burden of

23  *conclusively* establishing that the "related acts" provision permits it to deny coverage under the

24  Second GICA policy. Grants of insurance coverage are to be liberally construed, so that the

25  insured receives the maximum possible coverage. (*MacKinnon v. Truck Ins. Exch.* (2003) 31

26  Cal.4th 635, 648; *State Farm v. Partridge* (1973) 10 Cal.3d 94, 101-102; *CalFarm Ins. Co. v.*

27  *TAC* (1985) 172 Cal.App.3d 564, 577.) On the other hand, insurance policy exclusions, as well

28  as other limiting provisos and exceptions, are to be strictly construed, again so that the insured

ADLESON, HESS &
KELLY, APC
577 SALMAR AVE., 2D FL.
CAMPBELL, CA 95008
(408) 341-0234
FAX (408) 341-0250
WWW.AHK-LAW.COM

1  receives the maximum possible coverage.  (*MacKinnon*, *supra*; *State Farm v. Partridge*, *supra*;

2  *CalFarm v. TAC*, *supra*; *Beaumont v. Cal Union Ins. Co.* (1977) 63 Cal.App.3d 617, 623.) The

3  burden of proof is on the insurer to establish that its exclusions and limitations conclusively

4  apply to defeat coverage.  (*Garvey v. State Farm* (1989) 48 Cal.3d 395, 406; *Ins. Co. of North*

5  *America v. Sam Harris Const.* (1978) 22 Cal.3d 409, 412-413.)  As GICA is attempting to use

6  the "related acts" provision, a limiting provision of its policy, and it seeks to exclude coverage

7  under the Second GICA Policy, the provision must be narrowly construed in favor of coverage.

8      In short, INB need only show a *potential* that the claims are not related, while GICA must

9  *conclusively* prove the claims are related. As the two claims of wrongful conduct are separated

10  by years and arise from different allegations of error, and as the Underlying Action is still

11  proceeding so that new claims may arise during discovery and trial, GICA simply cannot meet

12  its burden, and its motion must fail.

13      **C.   The 2009 Andrist/Schultz Alleged Negligent Acts and the 2016 Hulse**

14          **Alleged Negligent Omissions are not So Causally or Logically Related As**

15          **to Destroy Coverage under the Second GICA Policy.**

16      California courts have rejected attempts like GICA's to vitiate the protection of an

17  insurance policy for which the insured paid significant premiums simply because there is *some*

18  link between two claims. In *Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Ins. Co.* (1993)

19  5 Cal.4th 854, 873, the California Supreme Court provided a basic framework to determine if

20  multiple claims are "related." The *Bay Cities* Court asserted that that the term "related" included

21  both *causal* and *logical* connections.

22          **1.    The Claims are not "Causally" Related.**

23      GICA incorrectly asserts that the claim arising from the alleged negligent acts by Andrist

24  and Schultz in 2009, made in connection with their completion of the application for issuance

25  of the policy , and the claim arising from the alleged negligent omissions by Hulse in 2016,

26  made in connection with his alleged failure to procure the policy that was requested are causally

27  related. *Bay Cities* explained that a "causal relation" is one where the initial wrongful act

28  "causes" the second wrongful act. (*Id*. at 868)("If an attorney's error causes one or more other

ADLESON, HESS &
KELLY, APC
577 SALMAR AVE., 2D FL.
CAMPBELL, CA 95008
(408) 341-0234
FAX (408) 341-0250
WWW.AHK-LAW.COM

Case No: 3:18-cv-03372-JST    SUPPLEMENTAL OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT    PAGE 11

1    errors, the result is a chain of causation that leads to an injury, that is, a single claim.")

2    GICA cites *Friedman Prof. Management Co., Inc. v. Norcal Mut. Ins. Co*. (2004) 120

3    Cal.App.4th 17 ("*Friedman*") in support of its erroneous assertion that the two claims are

4    causally related. However, the facts of *Friedman* bear no resemblance to those in the instant

5    case. In *Friedman*, the owner of a surgery center was sued for battery and invasion of privacy

6    arising out of a surgery that went horribly wrong. During the surgery, the owner of the surgery

7    center supplied the wrong equipment for an operation to remove a polyp from the patient's

8    uterus. This caused considerable bleeding, which prompted the owner of the center to attempt

9    to tamponade the patient's vagina in order to stop the bleeding. (*Id*. at 21.) The patient brought

10   a medical malpractice suit in 1994 and a subsequent suit for invasion of privacy in 1996. The

11   Court of Appeal found that there was only one claim, as the first act of malpractice – the botched

12   surgery – caused bleeding which formed the basis for the second alleged wrongful act – the

13   unconsented  touching of the vaginal area in order to stop the bleeding:

> In the case before us there is an undeniable *causal* relation between the *particular* sexual battery and invasion of privacy claims which the patient brought against the owner of the surgery center and her earlier malpractice claim. *But for* the earlier malpractice causing the bleeding in the first place, the owner of the center would never have touched her vaginal area in the effort to save her life, precipitating both claims. (*Id*. at 22.)
> …
> In the present case, there can be absolutely no doubt that the battery and invasion of privacy claims were *causally* related to the malpractice claim. Friedman was present in the room, operating the very pump which *he had supplied,* and which because he had supplied the wrong pump and the wrong fluids, there was an intake of water which caused the bleeding that he tried to stop, and that *attempt to stop the bleeding itself* constituted the battery claims. It is hard to imagine separate acts which are more clearly causally related. (*Id*. at 32; FN omitted.)

24   Unlike *Friedman*, the two alleged acts of wrongdoing in INB are not causally related.

25   That is, the alleged wrongful acts of incorrectly stating on the ACORD application and in the

26   Travelers Express online system that the Property was "sprinklered," did not cause the second

27   alleged wrongful act seven years later when INB allegedly failed to "properly and correctly

28   request that TRAVELERS remove the PSE immediately." (SAC, ¶ 55.)  Unlike in *Friedman*, the

ADLESON, HESS &
KELLY, APC
577 SALMAR AVE., 2D FL.
CAMPBELL, CA 95008
(408) 341-0234
FAX (408) 341-0250
WWW.AHK-LAW.COM

Case No: 3:18-cv-03372-JST    SUPPLEMENTAL OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT    PAGE 12

1    alleged first wrongful act did not cause an immediate harm. West Overland sought removal of

2    the PSE not because of the alleged prior error in checking a box incorrectly on a form, but

3    because Travelers had denied a claim based on this exclusion, and West Overland did not

4    want the PSE endorsement to remain a part of the policy.

5        Moreover, the passage of over seven years between the 2009 Andrist/Schultz alleged

6    negligent acts and the 2016 Hulse alleged negligent omissions makes any causal argument

7    impossible to advance. Neither the existence of the PSE, nor the alleged request by West

8    Overland for its removal from the policy, is dependent on the initial alleged error in checking

9    the box indicating that the property was fully sprinklered. The PSE could have been added by

10   Travelers at any time during prior renewals, and neither its attachment to the 2017 policy nor

11   West Overland's request for its removal was dependent on the initial alleged error of

12   misrepresenting the sprinkler status of portions of the property in the application for the 2009

13   policy. Thus, no causal connection exists between the two claims, and GICA has not

14   demonstrated conclusively otherwise.

15                **2.    The Claims are not "Logically" Related.**

16       While the test for "causally" related claims is fairly straightforward, and clearly not met

17   in this case, the test for whether two claims are "logically" related is not clearly outlined in *Bay*

18   *Cities*. Still, that case did provide certain outer bounds of relatedness that should be

19   considered. The Court stated: "At some point, a relationship between two claims, though

20   perhaps "logical," might be so attenuated or unusual that an objectively reasonable insured

21   could not have expected they would be treated as a single claim under the policy." (*Bay Cities*

22   *Paving & Grading, Inc. v. Lawyers' Mutual Ins. Co.* (1993) 5 Cal.4th 854, 873.)

23       Thus, the analysis rests on whether an objectively reasonable insured would have

24   expected coverage under the second policy for claims made for errors during that policy period.

25   In *Bay Cities*, the Court determined that although there was a lack of a causal relationship, the

26   attorney's two omissions *were* logically related: "[t]hey arose out of the same transaction,

27   involved the same client, were committed by the same attorney, and resulted in the same injury,

28   i.e., loss of the debt." (*Friedman* at 32 [internal citation to *Bay Cities* omitted].) Simply put, the

ADLESON, HESS &
KELLY, APC
577 SALMAR AVE., 2D FL.
CAMPBELL, CA 95008
(408) 341-0234
Fax (408) 341-0250
WWW.AHK-LAW.COM

Case No: 3:18-cv-03372-JST    SUPPLEMENTAL OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT    PAGE 13

alleged omissions in the instant case fail to meet this test, and they certainly do not meet it conclusively: these alleged omissions did not arise out of the same transaction, as the separate acts/omissions of the insurance agents were separated by years, and were performed by different persons, acting under different instructions, at different times; they were not committed by the same insurance professional; <u>and they did not result in the same injury, as they resulted in not one but two separate denials of coverage for which damages are not yet determined, because the Underlying Action has not yet been tried.</u>

At least legal writer has evaluated cases construing "related acts" provisions, including *Bay Cities* and its progeny, to cull the factors courts consider when determining whether claims are "logically" related. In "Related Acts Provisions: Patterns Amidst the Chaos," author John Zulkey conducted a survey of nationwide authority regarding "relatedness," which included *Bay Cities* and other California cases, in order to provide a framework for courts and practitioners to determine when claims are "related." (John Zulkey, *Related Acts Provisions: Patterns Amidst the Chaos*, 50 Val. U. L. Rev. 633 (2016). Available at https://scholar.valpo.edu/vulr/vol50/iss3/5/.) This Law Review article has been utilized as a tool and cited by Courts in evaluating relatedness provisions. (*See, e.g., Cushman & Wakefield, Inc. v. Illinois Nat'l Ins. Co.* (N.D. Ill. Apr. 20, 2018) 2018 WL 1898339.) The article observed that "courts typically have been influenced by the following general factors, none of which are themselves determinative [in determining whether two claims are related]:

> "(1) whether the claims are made by the same or different parties;
>
> (2) whether the claims arise from the same or different acts or omissions;
>
> (3) whether the acts are part of a pattern of similar activity;
>
> (4) whether there is a significant lapse of time between the causes giving rise to the claims; and
>
> (5) whether the claims arise from the same or a different injury."
> (*Related Acts*, at 640.)

Adleson, Hess &
Kelly, APC
577 Salmar Ave., 2d fl.
Campbell, CA 95008
(408) 341-0234
Fax (408) 341-0250
www.ahk-law.com

Case No: 3:18-cv-03372-JST    SUPPLEMENTAL OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT    PAGE 14

1  As set forth below, every factor identified in this article, except that both claims were brought

2  by the same plaintiff, weigh in favor of a finding that the claims are not related.

3                    **a.    The Claims Assert Separate Injuries and Damages.**

4          Where two claims cause the same harm, that weighs in favor of relatedness; whereas,

5  if two claims cause separate harms with distinct damages, that weighs against finding the

6  claims are related. (*Related Acts*, at 644; *Bay Cities* at 861; *Novapro Risk Solutions, L.P. v.*

7  *TIG Insurance Company* (Cal. Ct. App., Mar. 16, 2012, No. D059066) 2012 WL 913243, at

8  *12.)

9          The Court in *Bay Cities* determined that there was only one claim, and reasoned that

10  the contractor had one primary right—the right to be free of negligence by its attorney in

11  connection with the particular debt collection for which he was retained:

12              "[The contractor] suffered a single injury as a result of its attorney's
               [two] omissions—the inability to collect the amount owed ... [¶] ...
13              [W]hen, as in this case, a single client seeks to recover from a
               single attorney alleged damages based on a single debt collection
14              matter for which the attorney was retained—there is a single claim
               under the attorney's professional liability insurance policy." (*Bay*
15              *Cities,* at 861.)

16

17          Here, there are distinct and separately quantifiable damages that arise out of the 2009

18  Andrist/Schultz alleged negligent acts and the 2016 Hulse alleged negligent omissions. In its

19  operative complaint, West Overland clearly asserts that the measure of damages for the

20  alleged 2009 negligence is the damage from the first fire, and the measure of damages for the

21  alleged 2016 negligence is the damage from the second fire. (SAC, ¶¶ 50, 57.) Plaintiff asserts

22  that the separate omission of negligently failing to remove the PSE after the 2016 fire, prior to

23  the 2017 fire, caused additional damage in the form of amounts it must pay, that should have

24  been paid under the Travelers policy, to repair the damages caused by the second fire. (SAC

25  ¶¶ 37, 38, 39, 55 ("a second fire stared [sic] next door (again) and spread to WEST

26  OVERLAND's PROPERTY (again) causing ***additional damage*** and compounding the LOSS."

27  [Emphasis added.])  Unlike the facts in *Bay Cities*, INB's second alleged wrongful act did not

28  simply cause the same damage in a different way.  Instead, West Overland is able to articulate

ADLESON, HESS &
KELLY, APC
577 SALMAR AVE., 2D FL.
CAMPBELL, CA 95008
(408) 341-0234
FAX (408) 341-0250
WWW.AHK-LAW.COM

Case No: 3:18-cv-03372-JST    SUPPLEMENTAL OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT    PAGE 15

separate and greater damages associated with the 2016 alleged negligent omissions.

And this is quite logical. In *National Union Fire Ins. Co. v. Lynette C.* (1994) 27 Cal.App.4th 1434, the California Court of Appeal determined that three successive liability insurance policies applied to a claim that negligent supervision of a foster child that led to multiple circumstances of abuse across three policy years because each act of rape was a separate wrongful act that causes separate harm:

> *Bay Cities* grounded its focus on the single injury sustained by the contractor. The attorney's two omissions did not result in distinct injuries or even increase the single injury sustained. The attorney's two failings simply meant the contractor could not perfect its mechanic lien and collect what it was owed.
>
> This sensible view employed in *Bay Cities* becomes nonsensical when applied to our facts. To apply this view, we would be forced to conclude that several acts of negligent care resulting in several rapes wreak no more harm than one such act and rape. Needless to say, the *Bay Cities* court's focus on one injury does not help National here. (*National Union Fire Ins. Co. v. Lynette C.* (1994) 27 Cal.App.4th 1434, 1460–1461.)

Following this logic, the fact that West Overland is asserting separate and distinct damages associated with separate and distinct allegations. West Overland alleged that it suffered greater and additional damages because of the 2016 Hulse allegedly negligent omissions that increased its damages related to the 2009 Andrist/Schultz alleged negligent acts. (SAC, ¶¶ 37, 38, 39, 55.) Under the authority cited above, this weighs in favor of a finding against relatedness.

### b. The Claims Arise out of Different Acts and Omissions.

Claims that arise out of different acts or omissions weigh against a finding of relatedness. "Where all claims arise from the same act or acts, that fact weighs in favor of relatedness, whereas if they arise from separate acts, that fact weights against relatedness." (*Related Acts*, at 642; See also *Financial Management Advisors, LLC v. American Intern. Specialty Lines Ins. Co.* (9th Cir. 2007) 506 F.3d 922, 925 ("*Financial Management*".) In *Financial Management*, two investors filed separate lawsuits against an investment firm whose president, Kenneth Malamed, allegedly gave incorrect financial advice. (*Financial*

ADELSON, HESS & KELLY, APC
577 SALMAR AVE., 2D FL.
CAMPBELL, CA 95008
(408) 341-0234
FAX (408) 341-0250
WWW.AHK-LAW.COM

Case No: 3:18-cv-03372-JST   SUPPLEMENTAL OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT   PAGE 16

1    *Management*, at 924.) The District Court erroneously asserted that both lawsuits constituted

2    one "claim" under the policy, and were subject to a single limit of liability. (*Id*. at 923.)

3          The Ninth Circuit reversed, finding that the claims were not related and thus did not

4    constitute a single "claim." (*Id*. at 926.). The Court found that the claims were not related

5    because both investors were different, had unique objections, and were advised at separate

6    meetings on separate dates, and:

> **More importantly, some of the Wrongful Acts alleged by the
> two clients were different**. The district court focused solely on the
> allegations in the Sitrick and Steinman complaints relating to the
> investment vehicle common to both investors—CBO II. But a large
> part of the Sitricks' case against the FMA Parties was based on
> misrepresentations concerning their equity investments—
> investments not made by Steinman. Even with respect to CBO II,
> the Sitricks and Steinman allege different wrongful conduct by
> Malamed and FMA. The Sitricks based their CBO claims largely on
> Malamed's failure to disclose certain significant information,
> including: (1) that FMA failed to maintain sufficient
> liability insurance; (2) that FMA had been stripped of its
> management duties with respect to the first CBO it managed; and
> (3) that Malamed and FMA stood to earn substantial fees on the
> CBO investments. Steinman's claim, by contrast, relies heavily on
> affirmative misrepresentations in written materials prepared by
> Prudential, the underwriter for the CBOs, and in a commitment
> letter confirming that Steinman's investment would be placed in a
> low risk, "senior" tranche of CBO II when in fact it was placed in a
> more junior, higher-risk tranche. The Sitricks' claims were not
> based on written materials. (*Financial Management*, at 925–926
> (emphasis added.)).

20    In *Financial Management*, thus, the Ninth Circuit gave great weight to the fact that the

21   wrongful acts alleged against the defendant were different, distinguishing between affirmative

22   acts and omissions. (*Id*.) Here, the allegations against INB arise out of different wrongful acts

23   and omissions as well. The 2009 Andrist/Schultz alleged negligent acts arise out of alleged

24   *affirmative* acts, i.e., the acts of checking a box incorrectly when completing an application,

25   whereas the 2016 Hulse alleged wrongful conduct arises out of alleged negligent *omissions*,

26   i.e., allegedly failing to procure the insurance requested by failing to ensure that the PSE was

27   removed as requested. The operative complaint alleges that in 2009, INB acted affirmatively

28   negligently by checking a box on the application asserting that the Property was "Sprinklered,"

ADLESON, HESS &
KELLY, APC
577 SALMAR AVE., 2D FL.
CAMPBELL, CA 95008
(408) 341-0234
FAX (408) 341-0250
WWW.AHK-LAW.COM

Case No: 3:18-cv-03372-JST    SUPPLEMENTAL OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT    PAGE 17

1   which was alleged to be a misrepresentation resulting in denial of coverage. (See SAC, ¶¶12,

2   21, 34.)

3        The 2016 negligence allegations arise out of allegations of negligent *omissions* by INB.

4   The operative complaint asserts that INB "failed to properly and correctly request that

5   TRAVELERS remove the PSE." (SAC, ¶ 55.) As in *Financial Management*, the

6   characterizations of the alleged negligent conduct in each of 2009 and 2016 are different: the

7   first asserts a negligent wrongful act in the submission of affirmative errors in an insurance

8   application for a Travelers property insurance policy in effect from 2009-2010. The second

9   alleges an alleged negligent omission in failing to carry out a request made by the insured,

10  relating to a Travelers policy in effect seven years later, from 2016-2017. These differences in

11  the types of alleged wrongful conduct weigh against a finding of relatedness.

12               **c.   The Two Claims Arise from Conduct Alleged to have been**

13                      **Committed by Different People.**

14       Claims weigh in favor of relatedness where the claims are alleged to have been

15  committed by the same person. (*Bay Cities*, at 1275.) In *Bay Cities*, the *same attorney* allegedly

16  committed all alleged acts of negligence. (*Id.*) Likewise, in *Friedman*, the alleged claims were

17  all carried out by the same surgical center owner, Mr. Friedman. (*Friedman,* at 27-28.)

18       Unlike the claims of wrongful conduct in *Bay Cities* and *Friedman*, which not only

19  occurred contemporaneously, but were also carried out by the same person, the separate

20  allegations in this case have been levelled against different INB employees some seven years

21  apart. The 2009 negligence allegations relate to the alleged negligence of INB's then-

22  President, Charles Andrist, and his employee Janice Schultz. (*See* Section II, *supra*.) In

23  January, 2010, Mr. Andrist retired from INB, and before the 2016 Fire, Ms. Schultz passed

24  away. (Adams-Hess Decl., ¶ 4, Ex. C, at 194:25; 195:1-2; 196:7-14; Adams-Hess Decl., ¶ 3,

25  Ex. B, at 27:24-25; 28:1.) Those two persons were therefore not at all involved in the omissions

26  that are alleged to have occurred in 2016. (*See Id.*) The claim of 2016 alleged negligent

27  omissions were directed against Craig Hulse, the President of INB during 2016, who was not

28  involved in the application for issuance of the Travelers policy in 2009. (*Id.* at ¶ 4, Ex. C, at 303:

ADLESON, HESS &
KELLY, APC
577 SALMAR AVE., 2D FL.
CAMPBELL, CA 95008
(408) 341-0234
FAX (408) 341-0250
WWW.AHK-LAW.COM

Case No: 3:18-cv-03372-JST   SUPPLEMENTAL OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT   PAGE 18

1-8.) As the 2009 alleged negligent acts and the 2016 alleged negligent omissions were
allegedly committed by different individuals, this factor weighs against a finding of relatedness.

        **d.**      **It is not Determinative that the Claim was Made by the Same Plaintiff.**

    The only factor that weighs in favor of relatedness is that both claims were made by the same plaintiff, West Overland. (*Related Acts*, at 641.) However, no one factor is dispositive, and the fact that the same plaintiff brought each claim does not in itself make the claims causally or logically related. Indeed, California courts have certainly found multiple claims brought by the same plaintiff to be unrelated. (See *National Union Fire Ins. Co. v. Lynette C.* (1994) 27 Cal.App.4th 1434, 1460-1461.)

        **e.**      **The Alleged Wrongful Acts are not Part of the same Pattern of Similar Activity.**

    Under this factor, a court will be more likely to deem wrongful acts to be related if they arise from a pattern of similar activity. (*Related Acts*, 643.) GICA cites *Liberty Insurance Underwriters, Inc. v. Davies Lemmis Raphaely Law Corporation* (C.D. Cal. 2016) 162 F.Supp.3d 1068, 1078 ("Liberty") in support of its contention that the claims are related. However, *Liberty* involved claims of malpractice against a law firm alleged to have breached the standard of care due to a practice of providing affirmatively incorrect advice regarding a particular investment:

> "In this case, while the Underlying Actions have been brought by different plaintiffs, they all arise from a single course of conduct, a unified policy of making alleged affirmative misrepresentations to investors in order to induce them to invest in commercial real estate acquisitions facilitated by AMC." (*Liberty*, at 1078.)

    GICA also relies upon unpublished *WFS Fin., Inc. v. Progressive Cas. Ins. Co.* (9th Cir. 2007) 232 F.App'x 624 ("WFS") in attempting to characterize the alleged wrongful conduct against INB as related. However, as in *Liberty, WFS* involved a unified pattern of wrongful conduct that was repeated, and the relevant liability policy had an "interrelated wrongful acts" coverage limitation that is broader than the relevant wrongful acts coverage limitation in the

ADLESON, HESS &
KELLY, APC
577 SALMAR AVE., 2D FL.
CAMPBELL, CA 95008
(408) 341-0234
FAX (408) 341-0250
WWW.AHK-LAW.COM

Case No: 3:18-cv-03372-JST    SUPPLEMENTAL OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT    PAGE 19

Second GICA Policy. In *WFS*, plaintiffs in two underlying class actions asserted that WFS, an auto finance company, had a practice of impermissibly permitting independent dealers to mark up interest rates on automobiles based on subjective criteria. (*WFS*, at 625.) Moreover, the WFS policy very broadly defined "interrelated wrongful acts" to refer to wrongful acts "which have as a common nexus any fact, circumstance, situation, event, transaction or series of related facts, circumstances, situations, events or transactions." (*Id*. at 625.)

On the contrary, the GICA policies in this case do not include an "interrelated wrongful act" limitation, and further, "related wrongful act," is not defined at all in the GICA policies. The coverage limitations in the WFS and INB policies are so dramatically different that the *WFS* decision provides no relevant guidance to this Court.

Importantly, the instant matter contains no allegation that INB or its employees engaged in a pattern or practice of wrongful conduct. The *Liberty* court emphasized that the alleged wrongful conduct involved the repeated and uniform provision of affirmative misstatements regarding commercial real estate investments, including unified misstatements regarding the amount of commission and the actual purchase price of the properties. (*Liberty*, at 1075.) The court also noted there was a uniform pattern of affirmative misrepresentations alleged by plaintiffs that constituted "virtually identical allegations." (*Id*.) In *WFS*, the same pattern of uniform wrongful conduct – improperly allowing dealers to hike up interest rates on minority borrowers – was alleged. (*WFS*, at 625.) No such pattern or practice is alleged or existed in the instant case.

In addition to describing a pattern of unified wrongful conduct alleged to have occurred many times to different victims, *Liberty* and *WFS* both contain allegations of the insureds' profiting off of the affirmative misrepresentations, a theme of wrongful gain not at issue with the allegations against INB and its employees. Rather, in this case, the allegations surround two separate and isolated incidences: the initial allegedly negligent affirmative acts by two agency employees' checking the "sprinklered" box of the application in June 2009 during the procurement of the first Travelers policy, and the second, distinct, and different allegedly negligent omission seven years later in allegedly failing to follow the insured's instruction to

ADLESON, HESS & KELLY, APC
577 SALMAR AVE., 2D FL.
CAMPBELL, CA 95008
(408) 341-0234
FAX (408) 341-0250
WWW.AHK-LAW.COM

Case No: 3:18-cv-03372-JST    SUPPLEMENTAL OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT    PAGE 20

1  ensure that the PSE was removed from the second Travelers policy. (*See* Section II, *supra*.)

2  These two isolated events do not evince a pattern of wrongful conduct– they are simply two

3  unfortunate events that are unrelated.

4          **f.**     **The Better Part of a Decade Passed Between the Alleged 2009**

5                 **Wrongful Act and the Alleged 2016 Wrongful Act, Weighing**

6                 **Against a Finding of Relatedness.**

7         The longer the length of time between the wrongful acts, the less likely the claims are to

8  be found to be related. "A significant lapse of time between the causes giving rise to claims

9  weighs against them being deemed a pattern of activity, thereby making it less likely that the

10  resultant claims will be deemed related." (Related Acts, 643-644; *See Novapro Risk Solutions,*

11  *L.P. v. TIG Insurance Company* (Cal. Ct. App., Mar. 16, 2012, No. D059066) 2012 WL 913243,

12  at *13-14 (not reported).) A significant period of time elapsing between negligent allegations

13  also favors a finding of unrelatedness as it shows that the negligence occurred in a different

14  transaction. (*See Bay Cities, Friedman*.) *Over seven years* passed from the date of the 2009

15  alleged Andrist/Schultz negligent acts to the date of the 2016 alleged Hulse negligent

16  omissions. Seven years is a very significant period of time, so the time factor weighs against a

17  finding of relatedness.

18        **D.**    **INB Reasonably Expected Coverage for Both the Alleged Negligent**

19             **Act and the Alleged Negligent Omission.**

20         While in *Bay Cities* the California Supreme Court found that the term "related" was not

21  ambiguous, it maintained that a Court must still look to the objectively reasonable expectations

22  of the insured in determining if wrongful acts were related:

23            At some point, a relationship between two claims, though perhaps

24            "logical," might be so attenuated or unusual that *an objectively reasonable insured could not have expected they would be treated as a single claim under the policy*. In the present case,

25            there is no attenuation or surprise to the insured. The two errors by

26            the attorney are "related" in multiple respects. They arose out of the same specific transaction, the collection of a single debt. They

27            arose as to the same client. They were committed by the same attorney. They resulted in the same injury, loss of the debt. No

28            objectively reasonable insured under this policy could have

ADELSON, HESS &
KELLY, APC
577 SALMAR AVE., 2D FL.
CAMPBELL, CA 95008
(408) 341-0234
FAX (408) 341-0250
WWW.AHK-LAW.COM

Case No: 3:18-cv-03372-JST    SUPPLEMENTAL OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT    PAGE 21

1          expected that he would be entitled to coverage for two claims under

2          the policy. (*Bay Cities* at 873; emphasis added.)

3 The two separate allegations of wrongful conduct against INB, having occurred seven years

4 apart and having allegedly been committed by different individuals operating under different

5 instructions, cannot reasonably be treated as a single claim under the Second GICA Policy,

6 and INB reasonably expected that it would be entitled to coverage under each policy for

7 separate acts of alleged professional negligence. (Declaration of Craig Hulse ["Hulse Decl."], ¶

8 2.) INB purchased a separate professional liability insurance policy, and reasonably expected

9 that separate claims of wrongful conduct occurring seven years apart and allegedly committed

10 by different individuals would be entitled to separate coverage, as would each alleged claim of

11 professional negligence made against INB. (*Id*.) Thus, INB reasonably expected that the

12 Second GICA Policy for which it had paid substantial premiums would not be rendered

13 meaningless by its insurer's self-interested analysis of the claims made. (*Id*. at ¶ 3.) INB

14 President Craig Hulse was shocked when GICA denied the second claim, given the substantial

15 differences between the first claim and the second claim, and given INB's payment of over

16 $22,000 in premiums for coverage for wrongful acts made during the policy period. (*Id*. at ¶ 4.)

17 Mr. Hulse felt betrayed by GICA's denial of coverage, and reasonably expected coverage under

18 the 2017 GICA Policy. (*Id*. at ¶ 5.)

19       **E.    The Underwriting File Shows no Intent to Preclude Coverage for Any**

20             **Additional Claim Relating to West Overland**

21       The GICA underwriting file shows no intent to deny or limit any future claim that might

22 be brought by West Overland against INB. (Adams-Hess Decl., ¶ 6.) Neither the underwriting

23 file, nor the Second GICA Policy contains any indication of an intent to exclude claims related

24 to West Overland. (*Id*.) Had GICA intended to exclude any future claim by West Overland or

25 any claims related to the Property, it could have drafted an exclusion to the policy. Having failed

26 to do so, GICA cannot now make the argument that it was its intent to preclude coverage for

27 the 2016 Hulse allegedly negligent omissions.

28

ADLESON, HESS &
KELLY, APC
577 SALMAR AVE., 2D FL.
CAMPBELL, CA 95008
(408) 341-0234
FAX (408) 341-0250
WWW.AHK-LAW.COM

## IV.    <u>CONCLUSION</u>

For the reasons set forth herein, INB respectfully requests that this Court deny GICA's motion for summary judgment in its entirety, and that it grant summary judgment in favor of INB, finding that the Second GICA policy is applicable alongside the First GICA policy to the claims made in the Underlying Action.

In the alternative, INB requests that this Court permit this case to be tried in front of a jury after the final adjudication of the Underlying Action, as it is premature for a Court to make a determination on coverage. The issue of relatedness is a disputed question of fact, and a finding in favor of GICA cannot be made on summary judgment prior to final adjudication of the disputed factual issues in the Underlying Action. (*See e.g.*, *Biomechanics, Inc. v. Axis Reinsurance Co*. (D. Mass 2013) 963 F.Supp.2d 64, 70; *Dormitory Auth. Of New York v. Cont'l Cas. Co.,* No. 12 Civ. 281 (KBF), 2013 WL 840633, at *8 (S.D.N.Y. Mar. 5, 2013), aff'd in relevant part 756 F.3d 166 (2d. Cir. 2014.))

## V.    <u>OBJECTIONS</u>

INB objects to Exhibit C to the Declaration of Cass Cossairt as it does not contain a true and correct copy of the operative second amended complaint in the Underlying Action, but contains what appears to be an undated draft. A true and correct copy of the second amended complaint, which was filed in the Superior Court of California, County of Alameda is attached as Exhibit "A" to the Declaration of Nicole S. Adams-Hess.

Dated: January 18, 2019                    Respectfully submitted,

ADLESON, HESS & KELLY, APC

/s/    Nicole S. Adams-Hess

By: _____
Randy M. Hess
Nicole S. Adams-Hess
Attorneys for Defendant
INB Insurance Services Corporation

ADLESON, HESS & KELLY, APC
577 SALMAR AVE., 2D FL.
CAMPBELL, CA 95008
(408) 341-0234
FAX (408) 341-0250
WWW.AHK-LAW.COM

Case No: 3:18-cv-03372-JST    SUPPLEMENTAL OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT    PAGE 23