UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GENERAL INSURANCE COMPANY OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>INB INSURANCE SERVICES CORPORATION,<br><br>    Defendant. | Case No. 18-cv-03372-JST<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: ECF No. 18 |

Before the Court is Plaintiff General Insurance Company of America's motion for summary judgment. ECF No. 18. The Court will grant the motion.

**I.    BACKGROUND**

Plaintiff General Insurance Company of America ("General" or "GICA") seeks a declaratory judgment regarding the limits of its liability under insurance policies it issued to Defendant INB Insurance Services. The following facts are not in dispute:

General issued "Insurance Professionals Errors and Omissions Liability Insurance" policies to INB for the 2016 and 2017 calendar years. ECF No. 18-2 (policy period of January 1, 2016, to January 1, 2017); ECF No. 18-3 (policy period of January 1, 2017, to January 1, 2018). The 2016 policy includes a per-claim limit of liability of $1,000,000, and the 2017 policy includes a per-claim limit of liability of $2,000,000. ECF No. 18-2 at 2; ECF No. 18-3 at 1. Both policies provide that:

> Two or more covered **claims** arising out of a single **wrongful act** or arising out of any series of related **wrongful acts** will be considered a single **claim**. The single **claim** will be subject to the "Limit of Liability – Each Claim" in effect at the time such **claim** was first

# Left margin
United States District Court
Northern District of California

> made against the Insured. Only one deductible will apply to such single **claim**. If the first of such **claims** is made prior to the effective date of this policy, no coverage shall apply to any subsequent **claims** made during this **policy period** which are based upon the same or related **wrongful acts**.

ECF No. 18-2 at 10; ECF No. 18-3 at 9 (emphasis in original). Neither policy defines "related."

INB filed claims under these policies to defend against a state court complaint filed by West Overland, LLC. West Overland's operative complaint alleges the following: In 2009, INB obtained property insurance for West Overland through Travelers Casualty Insurance Company of America, for property located at 1000-1036 West Agpar Street, Oakland, California. ECF No. 35-1 at 5-7. When applying for coverage on West Overland's behalf, INB used an online quote system that included a question asking whether the property was sprinklered. *Id.* at 6. INB checked the box indicating that all four buildings were sprinklered, "even though only two units out of four buildings had sprinklers. Notably there was no way to indicate in this system whether a building was only partially sprinklered or what percent." *Id.* at 6-7. As a result, the Travelers policy included a "PROTECTIVE SAFEGUARDS ENDORSEMENT FOR SPRINKLERED LOCATIONS AND RESTAURANTS" ("PSE"), which provided that West Overland was required to maintain an "automatic fire protective or extinguishing system" and that Travelers would "not pay for loss or damage caused by or resulting from fire" if the system was not maintained in working order prior to the fire. *Id.* at 8-10; ECF No. 18-8 at 6-7. The policy "was set to auto-renew every year, [and] WEST OVERLAND was not asked to submit new information at each renewal." *Id.* at 11. At the time of fires that occurred on July 6, 2016, and May 13, 2017, West Overland was covered by the same Travelers policy, which ran from June 29, 2016, to June 29, 2017.[1] *Id.* at 14; ECF No. 18-8 at 1. Citing the PSE and the lack of sprinklers at the property, Travelers denied West Overland's claims based on both fires. ECF No. 35-1 at 13-15.

West Overland sued both Travelers and INB on November 3, 2016, after the denial of its claim based on the July 2016 fire. ECF No. 18-9. The complaint alleged that "INB breached its duty of care to Plaintiff when, knowing Plaintiff sought a policy that would cover a fire loss at [the

---

[1] The complaint does not allege the date of the second fire, but the parties do not dispute that it occurred on May 13, 2017.

property], INB procured the Policy pursuant to which Travelers effectively denied coverage for the loss." *Id.* at 3-4. West Overland amended its complaint on December 29, 2016, to allege more specifically that "INB breached its duty of care to PLAINTIFF when, knowing PLAINTIFF sought a policy that would cover property damage at the PROPERTY, including caused by fire, INB procured PLAINTIFF a policy with an endorsement that lead [sic] to the denial of coverage." ECF No. 18-10 at 9. General accepted INB's tender of defense of West Overland's lawsuit under the 2016 General policy. ECF No. 18-1 ¶ 3.

West Overland amended its complaint following the second fire. ECF No. 35-1 at 4-34. The second amended complaint adds allegations that, "[a]ccording to TRAVELERS, INB breached its duty of care to WEST OVERLAND when, after the first fire claim, it failed to properly and correctly request that TRAVELERS remove the PSE immediately," and that, "[b]ut for said breach, WEST OVERLAND would have had insurance coverage for the second loss." *Id.* at 16. General continues to defend INB under the 2016 policy but contends that "[n]o coverage is afforded under the 2017 GICA Policy, because the claims made during that policy period are based on the same or related wrongful acts giving rise to the claims made during the policy period of the 2016 GICA Policy." ECF No. 18-7 at 7 (emphasis omitted).

General seeks a declaratory judgment that "the allegations made against INB in the West Overland action represent a single 'claim,' subject to the $1,000,000 Each Claim limit of the 2016 General policy" and "that no coverage is afforded under the 2017 General policy." ECF No. 1 at 9. INB has filed counterclaims for breach of contract and breach of the covenant of good faith and fair dealing based on General's refusal to provide coverage under the 2017 policy. ECF No. 33 at 7-12.

General now moves for summary judgment on its declaratory relief claim. ECF No. 18. INB initially opposed the motion by requesting relief under Federal Rule of Civil Procedure 56(d), which allows a court to deny or defer ruling on a summary judgment motion "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." ECF No. 20. The Court denied that request and ordered supplemental briefing on the merits of General's motion. ECF No. 32 at 7. Both parties filed timely

3

supplemental briefs, and General's motion is now ripe for adjudication. ECF Nos. 35, 36.

## II. LEGAL STANDARD

Summary judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine only if there is sufficient evidence "such that a reasonable jury could return a verdict for the nonmoving party," and a fact is material only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When deciding a motion for summary judgment, the court must draw "all justifiable inferences" in the nonmoving party's favor and may not weigh evidence or make credibility determinations. *Id.* at 255.

Where the party moving for summary judgment would bear the burden of proof at trial, that party "has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000). Where the party moving for summary judgment would not bear the burden of proof at trial, that party "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If the moving party satisfies its initial burden of production, the nonmoving party must produce admissible evidence to show that a genuine issue of material fact exists. *Id.* at 1102-03. If the nonmoving party fails to make this showing, the moving party is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

## III. DISCUSSION

"In an action seeking declaratory relief concerning a duty to defend, 'the insured must prove the existence of a *potential for coverage*, while the insurer must establish *the absence of any such potential*. In other words, the insured need only show that the underlying claim *may* fall within policy coverage; the insurer must prove it *cannot*.'" *Hartford Cas. Ins. Co. v. Swift Distribution, Inc.*, 59 Cal. 4th 277, 288 (2014) (quoting *Montrose Chem. Corp. v. Superior Court*, 6 Cal. 4th 287, 300 (1993) (emphasis in original)). "The determination whether the insurer owes a

4

duty to defend usually is made in the first instance by comparing the allegations of the complaint with the terms of the policy. Facts extrinsic to the complaint also give rise to a duty to defend when they reveal a possibility that the claim may be covered by the policy." *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal. 4th 1076, 1081 (1993). Whether an insurance policy "provides a potential for coverage and a duty to defend . . . is a question of law." *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 18 (1995). "[O]rdinary rules of contractual interpretation apply. The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties. Such intent is to be inferred, if possible, solely from the written provisions of the contract. If contractual language is clear and explicit, it governs." *Powerine Oil Co. v. Superior Court*, 37 Cal. 4th 377, 390 (2005) (internal quotation marks and citations omitted).

General concedes that coverage is appropriate under the 2016 policy. The question is whether West Overland's complaint "can by [any] conceivable theory raise a single issue which could bring it within the policy coverage" of the 2017 policy. *Montrose*, 6 Cal. 4th at 300 (citation and emphasis omitted). This requires the Court to decide whether there is any way in which INB's alleged action (or inaction) regarding the first and second fires might *not* be deemed a "series of related wrongful acts" under the 2017 policy. ECF No. 18-3 at 9 (emphasis omitted).

In *Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Insurance Company*, the California Supreme Court interpreted language similar to the clause at issue here: "Two or more claims arising out of a single act, error or omission or *a series of related acts, errors or omissions* shall be treated as a single claim." 5 Cal. 4th 854, 866 (1993) (emphasis in original). The court concluded that "'[r]elated' is a broad word" but, in this context, "is not ambiguous and is not limited only to causally related acts." *Id.* at 873. To the contrary, "the term 'related' as it is commonly understood and used encompasses both logical and causal connections."[2] *Id.* Thus, errors are "related" if one "error causes one or more other errors." *Id.* at 868. But even if two

---

[2] The court further explained that it was "not suggest[ing] however, that, in determining the amount of coverage, the term 'related' would encompass every conceivable logical relationship. At some point, a relationship between two claims, though perhaps 'logical,' might be so attenuated or unusual that an objectively reasonable insured could not have expected they would be treated as a single claim under the policy." *Bay Cities*, 5 Cal. 4th at 873.

5

errors are not causally related, they are logically related if, for example, they lead to the same injury, such as two independent errors by an attorney at trial that both result in an adverse judgment against the attorney's client. *Id.*

In this case, West Overland contends that INB was negligent as to claims based on the first fire because INB erroneously checked a box that led to inclusion of the PSE in the 2009 Travelers policy, which was set up for automatic annual renewal. It contends that INB was negligent as to claims based on the second fire because INB did not remove the PSE after Travelers denied coverage to West Overland for damages caused by the first fire. INB argues that there can be no causal relationship because the alleged negligence occurred years apart and involved different INB staff. However, these distinctions do not change the fact that it is INB's alleged negligence in 2009 that allegedly caused the PSE to be placed in the Travelers policy – and, critically, that but for that alleged negligence, the PSE would not have been part of the Travelers policy at all, and there would have been nothing for INB to have removed after the first fire. West Overland's claims based on the two fires are therefore causally related.[3] *See Friedman Prof'l Mgmt. Co. v. Norcal Mutual Ins. Co.*, 120 Cal. App. 4th 17, 22, 33 (2004) (finding a "clear causal relationship" between a malpractice claim and sexual battery and invasion of privacy claims where, "[*b*]*ut for* the earlier malpractice causing the bleeding in the first place, the owner of the center would never have touched [the plaintiff's] vaginal area in the effort to save her life, precipitating both claims").[4] This is true even though, as General acknowledges, West Overland seeks separate damages for its claims based on each fire. *See id.* at 31-33.

INB speculates that "[t]he PSE could have been added by Travelers at any time during

---

[3] Because the Court finds that the claims are causally related, it does not reach the question of whether they might also be logically related.

[4] The issue in *Friedman* was "whether allegations of sexual battery and invasion of privacy arising out of the fact that the owner of a surgery center tried to stop a patient's vaginal bleeding are 'related' to the prior allegation of medical malpractice against the center itself for having supplied the wrong pump and fluids which caused the bleeding in the first place." *Freidman*, 120 Cal. App. 4th at 21. Friedman was not alleged to have engaged in any inappropriate touching; "the theory of the [second] suit was that Friedman had no business being in the operating room and touching her *at all*. Thus when he touched [the patient] *during and after the operation that went awry*, it was ipso facto battery, regardless of whether he had a good reason for doing so at the time." *Id.* at 24 (emphasis in original).

6

prior renewals, and neither its attachment to the 2017 policy nor West Overland's request for its removal was dependent on the initial alleged error of misrepresenting the sprinkler status of portions of the property in the application for the 2009 policy." ECF No. 35 at 18. But these are not the facts of this case. The Travelers policy included a PSE only because a box was checked in 2009 indicating that the property was sprinklered. No other basis for the existence of the PSE is asserted in West Overland's complaint or suggested by facts extrinsic to that complaint, and "[a]n insured is not entitled to a defense just because one can imagine some additional facts which would create the potential for coverage." *Friedman*, 120 Cal. App. 4th at 35.

General has met its burden of demonstrating conclusively that there is no potential for coverage under the 2017 policy. There is no dispute that INB first claimed coverage based on West Overland's claims arising out of the 2016 fire while the 2016 policy was in effect. Because the claims based on the 2016 and 2017 fires arise out of a "series of related wrongful acts," the 2017 policy provides no coverage. ECF No. 18-3 at 9 (emphasis omitted). INB argues that summary judgment should be denied pending final adjudication in West Overland's state court action, but it identifies no factual disputes to be resolved in that action that are material to the coverage question before this Court.

**CONCLUSION**

General's motion for summary judgment is granted. INB's request that the Court grant summary judgment in its favor under Federal Rule of Civil Procedure 56(f) is denied.

This ruling appears to resolve all issues in this case, including INB's counterclaims. If the parties agree, then General shall provide a proposed form of judgment to INB within five court days of the date of this order. Within five court days thereafter, INB shall either sign the proposed judgment, indicating its agreement only as to form, or provide to General written objections to the form of judgment. Within five court days of receiving INB's response, General shall file either (1) an approved form of judgment or (2) a proposed form of judgment, a copy of INB's objections, and a written response to the objections. The objections and response may not exceed three pages each.

///

If the parties believe that further proceedings are necessary, they shall file a joint case management statement within fourteen calendar days of the date of this order.

**IT IS SO ORDERED.**

Dated: March 22, 2019



JON S. TIGAR
United States District Judge